**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JAMES BROWN, III, | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No: |
| | ) | 17-cv-6101 (PGS)(TJB) |
| v. | ) | |
| | ) | |
| MCWANE DUCTILE, | ) | **MEMORANDUM** |
| | ) | **AND** |
| *Defendant.* | ) | **ORDER** |
| | ) | |
| | ) | |
| | ) | |

This matter arises from allegations of unlawful retaliation and wrongful termination by Defendant McWane Ductile. Presently before the Court is Defendant's Motion to Dismiss Plaintiff James Brown III's Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14). For the reasons discussed herein, Defendant's Motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff, a Pennsylvania resident, was an employee for Defendant, a New Jersey-based company, for over ten years. (Amended Complaint at ¶¶ 7-8). At all relevant times, Plaintiff was a member of a union, which had a Collective Bargaining Agreement ("CBA") with Defendant. (*Id.* at ¶ 10). Under the CBA, "Defendant was not free to terminate Plaintiff's employment without first documenting supposed disciplinary infractions committed by Plaintiff." (*Id.*).

According to the Complaint, in July 2014, Plaintiff sustained injuries while at work, which were purportedly caused by Defendant's failure to follow proper safety protocols, and later filed a claim for workers' compensation. (*Id.* at ¶¶ 11-13). In retaliation for filing this claim, Plaintiff alleges that the following month Defendant began cutting his overtime and weekend hours. (*Id.* at

1

¶ 14).  Four months later, in December, Plaintiff claims Defendant attempted to force him to perform work that he was not medically cleared to do. (*Id.* at ¶ 16).  That same month, he filed a grievance against Defendant, claiming that he was pressured to perform certain acts that were contrary to Occupational Safety and Health Administration ("OSHA") standards. (*Id.* at ¶ 17).

In response to these claims, Plaintiff alleges that he was subjected to various frivolous disciplinary actions by Defendant. (*Id.* at ¶ 18).  In June 2015, Plaintiff claims that he received a disciplinary letter for talking to coworkers during an unauthorized break, although no other employee received a similar letter. (*Id.* at ¶ 19).  Three months later, in September, Plaintiff claims he was reprimanded for not reporting to work on a Saturday, although he claims that he was only scheduled to work from Monday through Friday. (*Id.* at ¶ 21).  In November, Plaintiff claims he was disciplined for arriving late to work, although he claims video surveillance proves otherwise;[1] that same month he also claims he was reprimanded for taking a 45 minute lunch break, although company policy permits the same. (*Id.* at ¶¶ 22-23).  The following month, Plaintiff claims he was again disciplined for committing a safety violation, although he maintains no violation was committed. (*Id.* at ¶ 24).

In September 2016, Plaintiff claims he received two frivolous disciplinary notices for tardiness. (*Id.* at ¶¶ 26-30).  In the first incident, Plaintiff claims that he was involved in a car accident on his way to work, notified Defendant of the accident and provided the employer with a police report, yet he was still disciplined for being late. (*Id.* at ¶¶ 26-28).  In the second tardiness incident, Plaintiff claims he was not scheduled to work. (*Id.* at ¶ 29).  The following month Defendant demoted Plaintiff and cut both his time and pay. (*Id.* at ¶ 31).  According to the Complaint, in November 2016, Plaintiff was scheduled to work on a particular day; however, upon

---

[1] A copy of this video surveillance has not been provided for the Court to review.

arriving to work, nobody was present and Plaintiff later learned that he was not actually supposed to work that day. (*Id.* at ¶ 32). Plaintiff maintains that, under the CBA, Defendant was still obligated to pay Plaintiff, but failed to do so. (*Id.* at ¶ 33).

On January 27, 2017, Plaintiff claims that, while at work, he suddenly became ill with a severe case of the stomach flu, and he sought treatment at the emergency room of a hospital. (*Id.* at ¶¶ 37-40). Before leaving, Plaintiff claims to have informed his supervisor of his condition and he required medical attention. (*Id.* at ¶ 38). After receiving medical clearance to return to work three days later, Plaintiff reported back to work and provided his supervisor with proof of his medical treatment. (*Id.* at ¶¶ 39-40); however, that same day Plaintiff was fired for purportedly failing to notify his supervisor that he was leaving work. (*Id.* at ¶ 41).

In his Complaint, Plaintiff asserts three causes of action: (1) violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. § 34:19-1, *et seq.*; (2) wrongful discharge; and (3) violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*. Defendant seeks dismissal of all claims.

## LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald

3

assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000).

**ANALYSIS**

I. CEPA Claim

Defendant first seeks dismissal of Count I of Plaintiff's Complaint (CEPA) since no causal relationship exists between his protected activities and the adverse employment decision. Plaintiff responds, arguing that, given the "pattern of antagonism," the record demonstrates that Defendant retaliated against Plaintiff for having filed a grievance against Defendant for performing work contrary to OSHA regulations.[2]

To state a claim under CEPA, a plaintiff must demonstrate that: (1) he or she believed that the employer's conduct violated "a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy"; (2) "he or she performed a 'whistle-blowing' activity described in N.J.S.A. § 34:19-3c"; (3) "an adverse employment action was taken"; and (4) "a causal connection exists between the whistle-blowing activity and the adverse employment action." *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003). Neither party disputes the satisfaction of the first three factors; as such, the Court limits its discussion to the final factor, causal connection.

---

[2] Although Plaintiff's Complaint also alleges that he was retaliated based on his filing a workers' compensation claim, because such a claim is not protected under CEPA, the Court limits its discussion to Plaintiff's OSHA-related grievance. *See Davis v. Supervalu, Inc.*, No. 13-414, 2013 U.S. Dist. LEXIS 56341, at *9 (D.N.J. April 18, 2013) ("merely pursuing a worker's compensation claim is not whistleblowing activity and does not trigger the statutory protections of CEPA"); *Mehlman v. Mobil Oil Corp.*, 707 A.2d 1000, 1013 (N.J. 1998) ("the offensive activity must pose a threat of public harm, not merely private harm or harm only to the aggrieved employee").

Here, Defendant contends that Plaintiff fails to establish a prima facie case of retaliation, since there is no causal relationship between Plaintiff's OSHA-related grievance and his termination. In order to demonstrate causation under CEPA, "a plaintiff must show that the 'retaliatory discrimination was more likely than not a determinative factor in the decision.'" *Robles v. United States Envtl. Universal Servs., Inc.*, 469 F. App'x 104, 107 (3d Cir. 2012) (quoting *Donofry v. Autotote Sys., Inc.*, 795 A.2d 260, 271 (N.J. Super. Ct. App. Div. 2001)). "[E]mployees can demonstrate a causal link between protected activity and adverse employment action using circumstantial evidence." *See Espinosa v. Cnty. of Union*, 212 F. App'x 146, 153 (3d Cir. 2007). Circumstantial factors include: (1) "temporal proximity between the employee's expression and the adverse employment action"; (2) "a 'pattern of antagonism' on the part of the employer following the protected expression can raise the inference of causation; or (3) "proffered evidence, looked at as a whole" creates an inference of causation. *Id.* (citing *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).

Defendant contends that since almost two years have elapsed from when Plaintiff filed his OSHA-related grievance (December 2014) and when he was demoted[3] (October 2016) the "temporal proximity" between Plaintiff's protected act and the adverse action is too attenuated for the Court to infer retaliation. However, temporal proximity, alone, does not defeat a claim of retaliation, especially since it is rare for such adverse decisions to occur so soon after an employee participates in a protected activity that an "inference of discrimination [would be] impossible to ignore." *Bowles v. City of Camden*, 993 F. Supp. 255, 264 (D.N.J. 1998); *see also Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 894-94 (3d Cir. 1993) ("The mere passage of time

---

[3] "Retaliatory action under CEPA is confined to 'completed . . . personnel actions that have an effect on either compensation or job rank." *Borawski v. Henderson*, 265 F. Supp. 2d 475, 486 (D.N.J. 2003) (citations omitted).

is not legally conclusive proof against retaliation."). Similarly, Defendant contends that since the purported antagonistic episodes occurred months after Plaintiff's protected act further demonstrates the absence of retaliation. To the contrary, at this juncture, when considering the totality of the allegations set forth in Plaintiff's Complaint, there are sufficient facts alleged for a reasonable factfinder to infer unlawful retaliation. Therefore, Defendant's Motion to Dismiss Count I is denied.

II. Wrongful Discharge

In Count II, Plaintiff alleges a common law wrongful discharge claim in violation of public policy. Specifically, Plaintiff claims that Defendant terminated his employment in retaliation for him filing a workers' compensation claim. Defendant seeks dismissal of this claim, since there is no causal relationship between this claim and the retaliatory discharge.[4]

In New Jersey, "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." *Pierce v. Orth Pharmaceutical Corp.*, 417 A.2d 505, 512 (N.J. 1980). Under the New Jersey Workers' Compensation Act, it is unlawful for an employer to "discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer." N.J.S.A. § 34:15-39.1. It is well-established that an employee who has been discharged for seeking workers' compensation benefits may bring a claim for retaliatory discharge. *Lally v. Copygraphics*, 428 A.2d 1317, 1318-19 (N.J. 1981); *see also Pierce*, 417 A.2d at 510. "In order to state a prima facie case for retaliatory discharge, an employee must allege

---

[4] It should be noted that Defendant initially sought dismissal of Count II, based on CEPA's waiver provision. However, since both parties agree that Plaintiff's *Pierce* claim is predicated on his workers' compensation claim, not his OSHA grievance, Defendant's CEPA waiver provision argument is moot.

that: (1) he or she attempted to make a claim for workers' compensation benefits; and (2) he or she was discharged for making that claim." *Davis v. Supervalu, Inc.*, No.13-414, 2013 U.S. Dist. LEXIS 56341, at *13 (D.N.J. Apr. 18, 2013) (citing *Lally*, 428 A.2d at 1317). Like CEPA, a plaintiff asserting a *Pierce* claim must also show causation; that is, "'that he was in fact discharged in retaliation for taking action in opposition to corporate action which violates a clear mandate of public policy.'" *First Atlantic Leasing Corp. v. Tracey*, 738 F. Supp. 863, 870 (D.N.J. 1990) (quoting *House v. Carter-Wallace, Inc.*, 556 A.2d 353, 356 (N.J. Super. Ct. App. Div. 1989)). As noted above, in evaluating causation, courts must consider: (1) "temporal proximity between the employee's expression and the adverse employment action"; (2) "a 'pattern of antagonism' on the part of the employer following the protected expression can raise the inference of causation; or (3) "proffered evidence, looked at as a whole" creates an inference of causation. *Espinosa*, 212 F. App'x at 153.

As with Count I, Defendant contends that that given the gap in time between the protected activity (July 2014) and the adverse employment action (January 2017) it is temporally insufficient to infer causation. However, as discussed above, considering the totality of the circumstances, and the periods of antagonism directed towards Plaintiff after filing his workers' compensation claim, the Court is satisfied, for purposes of this motion, that there has been sufficient facts pled for a reasonable factfinder to infer retaliation. As such, Defendant's Motion to Dismiss Count II is denied.

III. ERISA Claim

Finally, Defendant seeks dismissal of Count III, which alleges violation of ERISA, since Plaintiff has failed to plead sufficient facts for the Court to find that Defendant fired him "in order to illegally deny Plaintiff retirement benefits."

Under Section 510 of ERISA, "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. "To establish a prima facie case under ERISA § 510, an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987) (citing 29 U.S.C. § 1140). A plaintiff must also demonstrate that the defendant "had the specific intent" to violate ERISA; that is, "that 'the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits.'" *Jakimas v. Hoffmann-LaRoche, Inc.*, 485 F.3d 770, 785 (3d Cir. 2007) (citing *DiFederico v. Rolm Co.*, 201 F.3d 200, 205 (3d Cir. 2000)). As noted above, at the motion to dismiss stage, "[i]t is sufficient to plead facts that, when taken as true, constitute circumstantial evidence of the employer's specific intent to interfere with the ERISA plan." *Stabile v. Allegheny Ludlum, LLC*, No. 12-168, 2012 U.S. Dist. LEXIS 126703, at *27 (W.D. Pa. Sept. 6, 2012) (quoting *Smith v. West Manheim Twp.*, No. 11-778, 2011 U.S. Dist. LEXIS 123135, at *9 n.2 (M.D. Pa. Oct. 25, 2011)).

Here, Plaintiff's ERISA claim fails for several reasons. First, the Amended Complaint is bereft of any factual allegations that suggest that Plaintiff's future retirement benefits played a role in his termination. Second, when reviewing the Amended Complaint, the Plaintiff has failed to plead any facts demonstrating specific intent. The Amended Complaint simply alleges that Plaintiff had worked for Defendant for fourteen years and eight months, and would have been eligible for early retirement benefits had he remained employed for fifteen years. (Amended Complaint at ¶¶ 42-43). However, even when viewing the Amended Complaint in Plaintiff's favor, he offers nothing more than conclusory and unsupported allegations that Defendant

8

intentionally fired him, since he was due to earn early retirement benefits.  Without more specific

allegations, Plaintiff fails to allege any circumstantial evidence for the Court to reasonably infer,

at this stage, that he is entitled to relief.  As such, the Court grants Defendant's Motion to Dismiss

Count III without prejudice.

**ORDER**

Having carefully reviewed and taken into consideration the submissions of the parties, as

well as the arguments and exhibits therein presented, and for good cause shown, and for all of the

foregoing reasons,

IT IS on this 1st day of May, 2018;

**ORDERED** that Defendants' Motion to Dismiss (ECF No. 14) is **GRANTED** in part and

**DENIED** in part as follows:

- Defendant's Motion to Dismiss Count I is **DENIED**

- Defendant's Motion to Dismiss Count II is **DENIED**

- Defendant's Motion to Dismiss Count III is **GRANTED** without prejudice; and it is
  further

**ORDERED** that Plaintiff has thirty (30) days from the date of this Order to file a Second

Amended Complaint.


PETER G. SHERIDAN, U.S.D.J.